**Aptos, LLC v Forman Mills Inc.**

2024 NY Slip Op 33896(U)

October 30, 2024

Supreme Court, New York County

Docket Number: Index No. 651286/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

------------------------------------------------------------------------X

APTOS, LLC,

|  |  |
|---|---|
| **INDEX NO.** | 651286/2024 |
| **MOTION DATE** | 06/06/2024 |
| **MOTION SEQ. NO.** | 001 |

Plaintiff,

- v -

FORMAN MILLS INC.,

Defendant.

**DECISION + ORDER ON MOTION**

------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (MS001) 8, 9, 10, 11, 12, 13 were read on this motion to/for _____ DISMISS _____.

Plaintiff Aptos, LLC (Aptos) brings this collection action against defendant Forman Mills Inc. (Forman Mills), asserting claims for breach of contract, account stated, promissory estoppel, and unjust enrichment in connection with its effort to recover more than $3 million that Forman Mills purportedly agreed to pay for software services pursuant to a long-term services contract (*see* NYSCEF # 2 – Complaint or compl). Forman Mills now moves to dismiss Counts I, III, and IV of the Complaint pursuant to CPLR 3211(a)(1) and (a)(7). For the following reasons, the motion is granted in part and denied in part.

## Background

The parties' dispute centers around a decades-long contractual relationship pursuant to which Aptos provided payment processing equipment and software to Forman Mills for use in its discount retail stores (*see* compl ¶¶ 1, 4-5, 9). In furtherance of this relationship, on March 13, 2017, Aptos, Inc. (as predecessor to Aptos) and Forman Mills entered into a Master Subscription Services Agreement (MSA) (*id.* ¶ 10; NYSCEF # 3 – MSA §§ 2-4). The MSA included and incorporated by reference a Subscription Services Order Form (the Services Form), which identified specific services that Aptos would perform for Forman Mills and the pricing for those services (compl ¶ 10; MSA at Services Form ¶¶ 1-3). The MSA had an initial services term of five years (the Initial Term) and could only be terminated for cause (compl ¶ 11; MSA § 15.1 & at Service Form ¶ 4).

Pursuant to the MSA, Forman Mills agreed to pay an annual subscription fee to Aptos on a quarterly basis during the Initial Term (*see* compl ¶ 12; MSA at Services Form ¶¶ 2, 4). At the beginning of each quarter, Aptos was required to

651286/2024 APTOS, LLC vs. FORMAN MILLS INC.
Motion No. 001

Page 1 of 6

send Forman Mills an invoice for subscription fees, and Forman Mills would pay those fees within 30 days of receiving that invoice (*see* compl ¶¶ 12-13). Forman Mills paid Aptos during the entire Initial Term while Aptos duly performed work for and rendered services to Forman Mills (*see id.* ¶ 14).

To allow Forman Mills to continue to receive software services after the Initial Period, the parties amended the MSA pursuant to an Amendment to the Master Subscription Services Agreement and Subscription Services Order Form (compl ¶ 15; NYSCEF # 4 – Amendment). The Amendment extended the MSA for an additional five-year period, beginning on March 13, 2022 (the Amended Term) (compl ¶ 15; Amendment § 4). The Amendment also updated the pricing for Aptos's services by requiring Forman Mills to pay (1) a minimum annual subscription fee of $1 million for the first year of the Amended Term, and (2) a minimum of $1,185,000 for years two through five of the Amended Term (compl ¶ 15; Amendment § 1).

Eventually the parties' business relationship took a turn in June 2023 when Forman Mills was acquired by Shoppers World (*see* compl ¶¶ 2, 16). Following this acquisition, Forman Mills stopped paying Aptos's invoices, including (i) a past-due invoice in the amount of $302,550 for services to be rendered between December 13, 2023, to March 12, 2024, as well as (b) several past-due invoices totaling $11,867.00 for ancillary hardware and service modifications (*see id.* ¶¶ 2, 16-18). Forman Mills's principal, Sam Dushey, would later explain in January 2024 that the reason for Forman Mills's nonpayment was that Forman Mills had moved onto another retail system (*see id.* ¶ 19). As a result, Dushey informed Aptos that, in his mind, the relationship between Aptos and Forman had terminated (*see id.*).

Aptos maintains that Dushey's statements amounted to a representation that Forman Mills will not pay Aptos for the remaining three years of the Amended Term (*see* compl ¶ 19). For its part, however, Aptos remains willing and able to provide services to Forman Mills under the MSA (*id.* ¶ 20). Hence, proceeding as if the MSA remained in full force and effect, Aptos issued to Forman Mills Invoice No. 8-0025181 in the amount of $303,984.50 for the first quarterly installment of service fees for Year 3 of the Amended Term (*see id.*). This invoice was due by March 13, 2024 (*see id.*), and presumably remains unpaid (*see generally id.* ¶¶ 21-26).

## Legal Standards

CPLR 3211(a)(7) provides for dismissal when a pleading "fails to state a cause of action." On a motion to dismiss pursuant to CPLR 3211(a)(7), the court "must accept as true the facts as alleged in the complaint and submissions in opposition to the motion, accord plaintiffs the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (*Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc.*, 20 NY3d 59, 63 [2012]). Whether a plaintiff can

**651286/2024 APTOS, LLC vs. FORMAN MILLS INC.**
**Motion No. 001**

**Page 2 of 6**

ultimately establish its allegations is not considered when determining a motion to dismiss (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

Meanwhile, dismissal based on documentary evidence under CPLR 3211(a)(1) is warranted "where 'it has been shown that a material fact as claimed by the pleader is not a fact at all and no significant dispute exists regarding it'" (*Acquista v N.Y. Life Ins. Co.*, 285 AD2d 73, 76 [1st Dept 2001] [alterations omitted]). In "those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference" (*Morgenthow & Latham v Bank of N.Y. Co.*, 305 AD2d 74, 78 [1st Dept 2003]).

### Discussion

Aptos commenced this action on March 11, 2024, asserting claims against Forman Mills for (1) breach of contract based on Forman Mills's purported failure to pay past invoices for service fees under the MSA, as well as its indication that it would no longer use Aptos's services or pay future fee invoices (including Invoice No. 8-0025181) (Count I); (2) account stated based on Forman Mills's purported failure to object to the invoices it received from Aptos (Count II); (3) promissory estoppel premised on Forman's promise to Aptos that it would purchase its retail software services for a five-year period (Count III); and (4) unjust enrichment based on Forman Mill's failure to pay Aptos for services it received (Count IV) (*see* compl ¶¶ 21-41). Forman Mills now seeks dismissal of Counts I, III, and IV (NYSCEF # 8). With respect to Count I, Forman Mills contends that Aptos has failed to allege a definite and final communication of Forman Mills's intent to forgo its contractual obligations under the MSA (NYSCEF # 11 – MOL at 2-3; NYSCEF # 13 – Reply at 1-2). As for Counts III and IV, Forman Mills maintains that, in addition to being insufficiently pleaded, these claims are barred by the existence of an express agreement governing their subject matter (MOL at 4-6; Reply at 2-4).

The court considers these contentions in turn below.

### I.  Count I – Breach of Contract/Anticipatory Repudiation

Although Count I of the Complaint is labeled as a breach-of-contract claim, a review of the pleadings indicates that Aptos has asserted a mixed claim for both existing breaches of the MSA and anticipatory repudiation insofar as Forman Mills has purportedly indicated that the parties' business relationship had terminated (*see* compl ¶¶ 21-26). Now, in seeking dismissal, Forman Mills primarily targets the anticipatory repudiation portion of Aptos's claim (*see* MOL at 2-3). It specifically argues that Aptos's allegations that Dushey stated that "in his mind" the parties' relationship "had been terminated," as well as its characterization of Dushey's statements as an attempt by Forman Mills to repudiate the MSA, are insufficient to establish an unequivocal decision by Forman Mills that it would forgo its payment

**651286/2024 APTOS, LLC vs. FORMAN MILLS INC.**
**Motion No. 001**

**Page 3 of 6**

3 of 6

[* 3]

obligations under the MSA (*see* MOL at 3; Reply at 1). Aptos retorts that, accepting its allegations as true and applying the liberal pleading standards afforded to plaintiffs under CPLR 3211(a)(7), it has sufficiently alleged that Forman Mills "unequivocally expressed its intent not to perform for the remainder of the MSA" through Dushey's assertions regarding the current status of the parties' relationship (*see* NYSCEF # 12 – Opp at 4, 6-7). The court agrees.

An "[a]nticipatory repudiation occurs 'when, before the time for performance has arisen, a party to a contract declares [its] intention not to fulfill a contractual duty'" (*Condor Funding, LLC v 176 Broadway Owners Corp.*, 147 AD3d 409, 411 [1st Dept 2017]). Put differently, "a party repudiates a contract when it voluntarily disables itself from complying with its contractual obligations" (*Computer Possibilities Unlimited, Inc. v Mobil Oil Corp.*, 301 AD2d 70, 77 [1st Dept 2002] [internal alterations and quotations omitted]). If a party repudiates its contractual duty before performance is due, the non-repudiating party is then entitled to claim damages for breach of the contract (*see Ergonomic Sys. Philippines Inc. v CCS Intl. Ltd.*, 7 AD3d 412, 414 [1st Dept 2004] [explaining that repudiation of contract "discharg[ed] plaintiff's remaining contractual duties and g[ave] plaintiff a claim for damages for total breach"]; *accord Norcon Power Partners, L.P. v Niagara Mohawk Power Corp.*, 92 NY2d 458, 462-463 [1998] ["repudiation entitles the nonrepudiating party to claim damages for total breach"]).

To sufficiently plead a claim for anticipatory breach, a plaintiff must allege that the repudiating party made a "definite and final communication of the intention to forego performance" (*see Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 267 [1st Dept 1995]). Such a communication "can be either 'a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach' or 'a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach'" (*EPAC Tech., Inc. v John Wiley & Sons, Inc.*, 225 AD3d 53, 57 [1st Dept 2024]). Regardless of its form, the communication must be "positive and unequivocal" (*see Princes Point LLC v Muss Dev. LLC*, 30 NY3d 127, 133 [2017]; *see also Highbridge Dev. BR, LLC v Diamond Dev., LLC*, 67 AD3d 1112, 1115 [3d Dept 2009] ["To support the claim of anticipatory repudiation, there must be 'an unqualified and clear refusal to perform with respect to the entire contract'"]).

Here, the crux of Aptos's anticipatory repudiation claim is that Forman Mills "essentially took the position that it would not pay Aptos for the remaining three years of the Amended Term under the MSA" (*see* compl ¶¶ 17-19, 23, 25). As alleged, Aptos reached this conclusion because Forman Mills's principal, Dushey, allegedly asserted that Forman Mills had "moved on to another retail system," such that, "in his mind," the relationship between Aptos and Forman Mills had terminated (*see id.* ¶ 19). These allegations, accepted as true and with every favorable inference afforded to Aptos, sufficiently establish Forman Mill's intent to forgo future performance under the MSA despite Aptos's willingness to continue

**651286/2024 APTOS, LLC vs. FORMAN MILLS INC.**
**Motion No. 001**

**Page 4 of 6**

4 of 6

providing services thereunder (*see QK Healthcare, Inc. v InSource, Inc.*, 108 AD3d 56, 54 [2d Dept 2013] [concluding that, after deeming allegations in complaint as true and resolving all inference in plaintiff's favor, complaint stated claim for anticipatory repudiation based on defendants' refusal to accept plaintiff's attempted return of unsold merchandise pursuant to the terms of defendants' return policies]).

That Dushey stated that the parties' relationship had terminated "in his mind" does not alter this conclusion. Importantly, Dushey's statement was not stated in a vacuum. Rather, Dushey allegedly communicated this position after Shopper World's acquisition of Forman Mills in June 2023, which was presumably the reason why, as Dushey noted, Forman Mills had transitioned to a new retail system (*see* compl ¶ 16). Furthermore, his representations came only *after* Forman Mills had stopped paying Aptos's invoices (*see id.* ¶¶ 17-18). Thus, upon consideration of this alleged context, Dushey's purported January 2024 statement to Aptos, at minimum, supports a pleading-stage inference that he was communicating Forman Mills's definite and final repudiation of the MSA (*see generally Vladeck, Waldman, Elias & Engelhard, P.C. v Paramount Leasehold, L.P.*, 46 Misc3d 1225(A), at *5 [Sup Ct, NY County, 2015] [observing that "[w]hat constitutes 'a definite and final communication' is a fact-intensive inquiry]).

As the Complaint otherwise asserts that Aptos had remained "willing and able to provide" services to Forman Mills throughout the remainder of the MSA's Amended Term (*see* compl ¶ 20), Aptos has plausibly alleged a claim for anticipatory breach of the MSA. Forman Mills's motion to dismiss Count I of the Complaint is denied.

## II. Counts III & IV – Promissory Estoppel and Unjust Enrichment

Forman Mills maintains that Aptos's promissory estoppel and unjust enrichment claims are barred by the existence of the MSA (MOL at 5-6; Reply at 3). The court agrees. A review of the Complaint establishes that Aptos's promissory estoppel claim is premised on a purported promise by Forman Mills to purchase Aptos's retail software for a five-year period (*see* compl ¶¶ 32-36). Meanwhile, its unjust enrichment claim is based the alleged uncompensated benefit that was conferred by Aptos through its services (*see* ¶¶ 37-41). Notably, these alleged "promises" and "benefits" flow from the same contractual terms governing Forman Mills's rights and obligations under the MSA and its Amendment (*id.* ¶¶ 10-15). And it is Forman Mill's purported breach of these express obligations that forms the basis of Aptos's breach of contract claim (*see id* ¶¶ 21-23, 25). Accordingly, because an express contract covers the subject matter of Aptos's quasi-contract claims, Counts III and IV must be dismissed (*see Kocak v Dargin*, 199 AD3d 456, 458 [1st Dept 2021] ["an unjust enrichment claim will not lie where an express contract covers the subject matter"]; *Pope Contr., Inc. v N.Y.C. Housing Auth.*, 214 AD3d 519, 521 [1st Dept 2023] ["The existence of a contract between the parties precludes claims for promissory estoppel and unjust enrichment" [citations omitted]]).

**651286/2024 APTOS, LLC vs. FORMAN MILLS INC.**
**Motion No. 001**

**Page 5 of 6**

5 of 6

To avoid this conclusion, Aptos maintains that it may plead quasi-contract claims in the alternative to its breach of contract claim because the enforceability of the MSA is in dispute (Opp at 9). It is, of course, true that "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract and will not be required to elect his or her remedies" (*see Kramer v Greene*, 142 AD3d 438, 441-442 [1st Dept 2016]). But here, Forman Mills explicitly "acknowledges that the MSA governs the subject matter at issue" (Reply at 4), and nothing in the Complaint otherwise suggests a challenge to the existence or applicability of the MSA. Accordingly, there is no basis on this record for Aptos to assert quasi-contract claims in the alternative to its breach of contract claim.

In sum, Forman Mill's motion to dismiss Counts III and IV of the Complaint is granted and those claims are dismissed.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendant's motion to dismiss the Complaint is granted insofar as dismissing Counts III and IV and denied in all other respects; and it is further

ORDERED that within 30 days of the e-filing of this order, defendant shall file an answer to the Complaint; and it is further

ORDERED that a preliminary conference shall be held via Microsoft Teams on December 18, 2024, at 11:30 AM or at such other time that the parties shall set with the court's law clerk. Prior to the conference, the parties shall first meet and confer to stipulate to a preliminary conference order, available at https://www.nycourts.gov/LegacyPDFS/courts/comdiv/NY/PDFs/part49-PC-Order-fillable.pdf, in lieu of a conference; and it is further

ORDERED that that counsel for plaintiff shall serve a copy of this decision, along with notice of entry, on defendant within ten days of this filing.

10/30/2024
DATE

MARGARET A. CHAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | REFERENCE |

651286/2024 APTOS, LLC vs. FORMAN MILLS INC.
Motion No. 001

Page 6 of 6

6 of 6